EDWARD P. LAWTON, demandante y apelado, *v.* PORTO RICO FRUIT EXCHANGE y EDWARD B. LESSESNE, demandados y apelantes.

No. 4925.—*Sometido:* Marzo 21, 1930. *Resuelto:* Mayo 20, 1931.

292

*O. B. Frazer* y *R. Castro Fernández,* abogados de la Porto Rico Fruit Exchange, apelante; *J. H. Brown, C. Ruiz Nazario* y *G. E. González,* abogados de Lessesne, también apelante; *Coll y Cuchí & Cruzado Silva,* abogados del apelado.

El Juez Asociado Señor Aldrey, emitió la opinión del tribunal.

En la Corte de Distrito de San Juan se estableció el pleito que motiva este recurso para que fuesen declaradas nulas las actuaciones de otro pleito seguido en una de las cortes municipales de esta ciudad, la sentencia en él dictada, la venta de bienes del demandado entonces, ahora demandante, la inscripción que esa enajenación produjo en el Registro de la Propiedad y para obtener indemnización por daños y. perjuicios contra el demandante en el anterior pleito y contra la tercera persona que compró en la subasta judicial. Dictada sentencia condenatoria han apelado de ella los dos demandados, quienes han tramitado sus recursos conjuntamente pero presentando alegatos separados.

Los apelantes han señalado muchos motivos de error, substancialmente iguales, pero por el estudio que hemos hecho de este caso nos bastará considerar y resolver los que se refieren a que la sentencia no está sostenida por la prueba.

El pleito No. 11920 de cuya nulidad se trata comenzó en la corte municipal por demanda jurada radicada el 22 de julio de 1924 interpuesta por la corporación Porto Rico Fruit Exchange contra Edward P. Lawton en cobro de $451.24; alegándose en ella que desde el año 1920 el demandado tiene una cuenta corriente con la demandante por las mercancías y dinero que le suministraba la demandante al demandado, en la que se hacían algunos abonos de dinero; que a partir del 21 de abril de 1921, unos tres años antes de dicha demanda, esa cuenta arrojó un saldo a favor de la demandante de $451.24 de acuerdo con la cuenta detallada que de ella se acompañó con la demanda y que ese saldo no ha sido pagado a pesar de las gestiones de cobro practicadas, por lo que solicitó sentencia por esa cantidad, sus intereses legales y costas.

Para fundar la corte de distrito la sentencia que motiva esta apelación declaró probados los siguientes hechos:

"El día 22 de julio de 1924, The P. R. Fruit Exchange pre-

sentó una demanda en la Corte Municipal de San Juan, P. R. (sección 1ra.), contra el Sr. Edward P. Lawton, en cobro de la suma de $451.24, como balance de una cuenta corriente llevada por dicho señor Lawton, durante el año 1920, con la P. R. Fruit Exchange, por mercancías y dinero efectivo que la última suministraba al primero; haciéndose constar en dicha demanda (párrafo 3ro.) que el demandado entonces, señor Lawton, a su vez abonaba periódicamente a la cuenta cantidades para ser deducidas del importe total de la misma; a la demanda se acompañó una cuenta detallada. Tenemos a la vista el pleito de la Corte Municipal de San Juan, número 11920 (Exhibit B del demandante), en el cual aparece la demanda antes mencionada, y todos los demás procedimientos de que vamos a hablar de ahora en adelante. En la página 8 de dicho récord aparece una carta en idioma inglés, firmada por Edward P. Lawton, y reconocida por él como auténtica, la que tiene fecha julio 24 de 1924.

"En dicha carta hace constar el señor Lawton, dirigiéndose a los abogados señores Mestre y Loret, que eran abogados entonces de la P. R. Fruit Exchange, entre otras cosas, las siguientes:

" 'Que el día anterior a la fecha de la carta había recibido "The Court Summons" en el caso de la P. R. Fruit Exchange contra él por la alegada deuda de $451.24. Contestaba, además, que él nunca había rehusado pagar todas sus deudas justas a la Fruit Exchange, de la cual era él un miembro; que en los últimos dos o tres años, él había encontrado que las cuentas de la misma no eran exactamente llevadas, pues ya en los años 1919 y 1920 había habido una discrepancia de algunos $300 en el balance de cuenta; que en el año 1921, él había encontrado un error de algunos $250 en las cuentas, del cual error él había reclamado, y sin embargo, persistían en cobrarle la suma de $450; que el señor Lawton deseaba someter el asunto a un arbitraje de un contable experto; y en resumen, alegaba que él debía negarse a pagar esa cuenta hasta que se le probare que él estaba equivocado en el asunto. Y en el último párrafo de la carta, dijo literalmente lo siguiente: "If it is desired to push the matter in the Courts I will appoint a lawyer to represent my interests and will request time to obtain the papers and accounts, now in the States, which will prove my contention." ' "

"Aparece del récord número 11,920 (página 4), que en 23 de junio de 1926 el abogado de la demandante P. R. Fruit Exchange, Sr. Salvador Mestre, presentó una declaración jurada por él, haciendo constar que el expediente original de la Corte Municipal se

había traspapelado y que con el fin de que pudiera ser reconstruído se acompañaba a dicho *affidavit* una copia fiel y exacta de la demanda, así como también la copia del emplazamiento debidamente diligenciado por la persona que lo hizo en 23 de julio de 1924, la notificación al demandado Edward P. Lawton, así como una carta de éste (que es a la que hemos hecho referencia anteriormente).

"El emplazamiento original que se dice fué expedido por la Corte no aparece en el récord que tenemos a la vista.

"El titulado emplazamiento que presentó el abogado, señor Salvador Mestre, no tiene fecha, ni está firmado por el secretario, y por ningún secretario auxiliar de la Corte Municipal, y al dorso contiene el siguiente juramento:

" 'Yo, Luis Fajardo, bajo juramento declaro: que soy mayor de 18 años de edad, vecino de San Juan y no tengo interés alguno en el asunto origen de esta acción; ni tampoco soy parte del mismo; que recibí el presente emplazamiento a las diez de la mañana del día 23 de julio de 1924 y que a la una de la tarde de dicho día notifiqué el mismo personalmente al demandado Edward P. Lawton, entregando a dicho demandado y dejando en su poder personalmente en su residencia del edificio "Miramar Apartment," una copia de la demanda mencionada en dicho emplazamiento, habiendo hecho constar al dorso con mi firma del referido emplazamiento el sitio y fecha de su entrega y notificación. (Fdo.) Luis Fajardo.

" 'Jurado y suscrito ante mí por Luis Fajardo, mayor de edad y vecino de esta ciudad, a quien personalmente conozco, en San Juan, P. R., a 10 de junio de 1926.

" ' (Fdo.)      Rafael Aldea Bigles,
" ' (Fdo.)      Raf. del Manzano,
" 'Sec. de la Corte.'

"Después aparece una moción del demandante de fecha 8 de junio, 1926, pidiendo se anotara la rebeldía del demandado, señor Lawton (nótese que esta moción tiene fecha 8 de junio de 1926, o sea dos días antes de la fecha 10 de junio de 1926 que tiene el juramento del emplazamiento que dejamos copiado más arriba). Al pie de dicha moción aparece una nota de rebeldía con fecha 6 de julio de 1926. Después hay una moción sobre aseguramiento de sentencia de fecha 9 de junio de 1926. Después hay una orden de la Corte, decretando dicho aseguramiento, que tiene fecha 7 de julio de 1926.

"Después aparece la sentencia registrada en rebeldía por el Secretario de la Corte, con fecha 6 de julio de 1926. A continuación

hay una moción de la demandante, dirigida al Juez de la Corte Municipal, en la que solicita dicte una orden al Márshal de dicha Corte, sobre ejecución de la sentencia dictada.

"En la página 16 de dicho récord aparece una orden que copiada literalmente lee como sigue:

" ' 'Vista la moción de la demandante solicitando ejecución de sentencia, se accede a lo solicitado y se ordena la ejecución de la sentencia en este caso. Líbrese por el Secretario el correspondiente mandamiento al Márshal de esta Corte para su cumplimiento.

" 'San Juan, P. R., agosto 27 de 1926.

" ' (Fdo.)    José S. Aybar,
" 'Juez Mpal. de San Juan,
Sec. 1ra.'

"Después aparece en la página 19 una orden de ejecución expedida por el Secretario de la Corte Municipal de San Juan, al Márshal de la Corte Municipal de Carolina, P. R.

"Después aparecen otras actuaciones, y finalmente, en la página 29, que es la última, aparece el acta de subasta en virtud de la cual fué vendida la propiedad inmueble del señor Lawton al mejor postor, que lo fué el ahora demandado Edward B. Lessesne. La subasta se verificó el día 27 de septiembre de 1926."

En vista de esos hechos la corte inferior llegó a las siguientes conclusiones: que es muy significativo que el pleito estuviera paralizado dos años y que continuara cuando el demandado podía pensar, en vista de su carta a los abogados, que el pleito no había seguido en la corte; que el emplazamiento no está firmado por el secretario, por lo que viola el artículo 89 del Código de Enjuiciamiento Civil; que el diligenciado del emplazamiento dice que en la fecha que hace el juramento la persona que lo verificó tiene 18 años pero no dice que los tuviera cuando hizo el emplazamiento dos años antes, y que siendo muy defectuoso la corte actuó sin jurisdicción por lo que la sentencia es nula: que la reconstrucción del expediente no fué ordenada por la corte como requiere el artículo 344 del Código de Enjuiciamiento Civil; que la venta de las fincas es nula porque la realizó el márshal de la Corte Municipal de Carolina sin orden de la Corte Municipal de San Juan: y que los edictos anuncián-

dola se publicaron por menos de los veinte días que señala el artículo 251, No. 2, del Código de Enjuiciamiento Civil. Estas conclusiones son impugnadas por los apelantes.

■ No se sabe cuándo se extravió o traspapeló el pleito de la corte municipal pues sólo sabemos que dos años después de iniciado se intentó su reconstrucción por haberse perdido, y por esto no puede sostenerse, como dice la corte inferior, que sea muy significativo que el pleito estuviese paralizado dos años, pues cualquiera paralización de un pleito por ese tiempo o por más no lleva a ninguna conclusión en contra del demandante como parece creer la corte inferior, sino a la de que la parte demandante no ha sido diligente en proseguirlo. Ni tampoco lleva a la conclusión de que el demandante estuviese justificado en pensar que el pleito no continuaba su curso como consecuencia de la carta que escribió a los abogados de la corporación demandante.

■■■ Por la declaración jurada del abogado de la corporación demandante, no contradicha, se sabe que presentó en la corte municipal el emplazamiento hecho al demandado y moción para sentencia, que ese expediente se extravió; y por la declaración jurada de Luis Fajardo se sabe que él notificó la demanda a Edward P. Lawton el 23 de julio de 1924, o sea, al día siguiente de la radicación de la demanda, hecho que también se probó con la carta del mencionado Lawton a los abogados de la parte contraria. Esas declaraciones juradas y la carta de Lawton eran bastante para que la corte adquiriese jurisdicción sobre el demandado, aunque por las circunstancias especiales de este caso no se presentase ahora el emplazamiento original librado por el secretario porque habiendo sido presentado a raíz de la demanda se ha perdido. La aceptación del demandado de haber sido notificado de la demanda en 23 de julio de 1924 fué suficiente para dar jurisdicción a la corte sobre su persona de acuerdo con el No. 4 del artículo 97 del Código de Enjuiciamiento Civil, según el cual la aceptación por escrito del demandado es prueba de haberse hecho la citación y entrega de la de-

manda. El hecho de la citación y no la certificación o declaración jurada de su diligenciamiento es lo que da jurisdicción a la corte. *Ortiz* v. *San Miguel,* 34 D.P.R. 228; *Herman* v. *Santee,* 103 Cal. 519. En vista de esa aceptación del demandado no es de importancia en este caso si no aparece claramente que la persona que hizo la citación tenía entonces más de 18 años, si no se presentó por haberse perdido el emplazamiento original librado por el secretario, ni que no conste que se hiciera la prevención al demandado de que si no comparecía y contestaba el demandante podía solicitar que se le concediera la petición de la demanda; pero aun admitiendo que tal prevención no fué hecha, ese defecto no es de tal naturaleza que privara a la corte de jurisdicción en forma tal que convirtiese en algo nulo de raíz, inexistente, el mismo emplazamiento y todas las actuaciones de la corte a partir de él, según dijimos en el caso de *Buonomo* v. *Sucesión Juncos,* 28 D.P.R. 412, y caso en él citado.

En cuanto a la falta del sello de la corte municipal en el emplazamiento presentado nos bastará recordar que se trata de una copia de él por haberse perdido el original que fué presentado a la corte y que las cortes municipales no tienen sello, según el artículo 18 del Código de Enjuiciamiento Civil.

El fundamento de nulidad referente a que no se ordenó por la corte la reconstrucción del expediente de acuerdo con el artículo 344 del Código de Enjuiciamiento Civil carece de importancia, pues no fué necesaria por haber aparecido los autos excepto el emplazamiento diligenciado, diligencia que con la carta del Sr. Lawton a que nos hemos referido, que ha sido reconocida por él en el juicio, es bastante para solicitar y obtener la sentencia en rebeldía. En 33 Corpus Juris, págs. 1092 y 1093, se dice lo siguiente:

"Aunque la notificación del procedimiento pueda haber sido defectuosa o irregular, la sentencia no será necesariamente nula. Debe aprovecharse de tal extremo mediante la correspondiente moción o procedimiento dentro del litigio. Tan sólo cuando la supuesta no-

tificación es tan irregular que no equivalga a notificación alguna es que puede decirse que hay falta de jurisdicción que hace la sentencia nula; de lo contrario la sentencia, a lo ·sumo, es anulable, y ni siquiera es anulable si se renuncia al defecto. No se puede sentar una regla general más definida para determinar qué defectos son fatales y cuáles meras irregularidades.''

Y de la nota 76 de la página 1092 copiamos:

''La distinción en realidad es clara. Si se hace una tentativa de notificación y realmente se llega hasta el demandado, aunque tal notificación no sea hecha o diligenciada en la forma y modo exigidos por la ley, se presenta un caso en que surge una jurisdicción que hace que la sentencia sea válida contra cualquier ataque colateral.''

■ El hecho de que la moción solicitando sentencia en rebeldía esté fechada dos días ántes de la en que Fajardo juró que había hecho la citación del demandado Lawton no tiene importancia, porque no existe constancia en los autos de que ella fuese presentada antes que la otra.

■ Pasemos ahora a la nulidad que consideró más importante la corte inferior para anular la subasta y el título del comprador, fundada en que el márshal de la Corte Municipal de Carolina hizo la venta en ejecución de la sentencia sin orden de la Corte Municipal de San Juan que conocía del pleito.

Al día siguiente de haber sido solicitada la sentencia en rebeldía se presentó moción para aseguramiento de la sentencia. Registrada tal sentencia la corte municipal decretó el aseguramiento interesado y ordenó el embargo de bienes del demandado, disponiendo que para verificarlo se librase por el secretario mandamiento al márshal de la corte o para el márshal correspondiente al distrito judicial municipal que le solicitare la parte demandante; y cuando se trató de ejecutar la sentencia se solicitó de la corte que dictase orden al márshal de la corte para cumplirla, habiendo accedido la corte a que se ejecutase la sentencia disponiendo que el secretario librase el oportuno mandamiento al márshal de

la corte para tal fin. Ese mandamiento fué librado por el secretario al Márshal de la Corte Municipal de Carolina, que vendió bienes de Lawton radicados en su demarcación territorial.

El caso de *Solá* v. *Castro*, 32 D.P.R. 804, en que se fundó la corte inferior para declarar la nulidad de las actuaciones del márshal de Carolina no es aplicable al presente, pues lo que en él se decidió fué que el márshal de una corte no está autorizado para endosar la orden a él librada al márshal de otro distrito; y aquí la orden al de Carolina le fué librada directamente por el Secretario de la Corte de San Juan. Además, si bien para embargar bienes como aseguramiento de sentencia es necesaria una orden de la corte, no lo es para que una sentencia pueda ser cumplida, pues en ninguno de los artículos 232 al 268 del Código de Enjuiciamiento Civil que tratan de la ejecución de las sentencias se requiere orden de la corte, con excepción de lo dispuesto en el artículo 243 para cuando han pasado cinco años sin ser ejecutada, si no se trata de cobro de dinero. Si en tal caso se necesita orden de la corte es porque antes de los cinco años no se necesita ninguna, siendo, por tanto, deber ministerial del secretario, en el caso no comprendido en el artículo 243, librar la orden para ejecución de la sentencia. El secretario puede librar mandamiento de ejecución sin previa orden de la corte. *Dorn* v. *Howe,* 59 Cal. 129. La expedición del mandamiento de ejecución es un acto ministerial del secretario. 11 Cal. Jur., pág. 42; *Hidalgo* v. *Crossfield,* 17 Filipinas 466; 3 Bancroft 2575, párrafo 1941. Por consiguiente, la orden de la corte mandando a cumplir la sentencia por el márshal de su corte puede considerarse superflua; y como existía una sentencia condenatoria de pago, el secretario de dicha corte estuvo autorizado de acuerdo con el artículo 245 del Código de Enjuiciamiento Civil para librar el mandamiento al Márshal de la Corte Municipal de Carolina donde radicaban los bienes que iban a ser ejecutados. Independientemente de lo dicho, la corte en su sentencia ordenó al secretario que

librase mandamiento para la ejecución de ella, y al decretar el aseguramiento de la sentencia, dispuso que para el embargo de bienes se librara mandamiento al márshal de la corte o al que designare el demandante.

■■■■ Fué también motivo para dictar la sentencia apelada que en la publicación de los edictos anunciando la venta de las fincas de Lawton no mediaron los veinte días que exige el artículo 251, No. 2, del Código de Enjuiciamiento Civil. Ese precepto dispone que la publicación de la venta se hará por espacio de veinte días fijándose el anuncio en tres sitios públicos del distrito o ciudad en que se hallaren los bienes o publicándose el aviso una vez por semana durante veinte días en algún periódico del distrito, si lo hubiere. Por consiguiente, son dos las maneras de anunciarse la subasta al público; y en este caso se probó, sin contradicción, que la subasta fué anunciada fijándose aviso de ella por más de veinte días en la corte municipal, en la oficina de correos y en la casa municipal de Carolina; y también en el correo y casa municipal de Trujillo Alto, quedando así cumplido el estatuto, sin que el haber sido publicado también en un periódico por 18 días haga nula la subasta, pues con la publicación en tres sitios públicos del distrito municipal estaba cumplido el estatuto, ya que de ese modo resulta innecesaria la publicación en periódico. De todos modos ese defecto, si lo fuera, no haría nula la subasta en un procedimiento colateral como es éste. *Blood* v. *Light,* 38 Cal. 649 y *McCullough* v. *Estes,* 25 Pac. 724.

■■■ Consignó además la corte inferior en su opinión lo siguiente: ''También aparece probado, según la declaración del testigo de los demandados, señor Lucas Castro, lo siguiente: Que Lucas Castro fué uno de los postores en la subasta celebrada, y que en dicha subasta el demandado Lessesne dijo: 'Que el único interés de él era que subiera el precio de la subasta'.'' Ese testigo dijo algo más, a saber: ''Pues deseo que el dueño de esta finca, que está en Europa, darle una oportunidad de que si él quiere comprar la finca

poderla tener y caso de que él no quiera la finca y usted la quiera comprar la compra usted.''

Lo expuesto por la corte parece contener una imputación de fraude o de mala fe, pero el hecho de que uno de los tres postores que hubo en la subasta dijese lo que manifiesta la corte no constituye fraude pues el deseo de que el precio de la subasta fuera alto no era perjudicial para el ejecutado sino beneficioso. Además, según ese testigo él ofreció $750 en la subasta y quizá hubiera llegado a $1,000, pero la venta fué hecha por más dinero. También el demandante admitió en el juicio que el Sr. Lessesne declararía que no hubo intimidación de ninguna clase en la subasta. En vista de lo expuesto no podemos concluir que hubo fraude ni nada contrario a los intereses del ejecutado.

No encontrando que se haya demostrado nulidad alguna en el pleito de la corte municipal se hace innecesario considerar otras cuestiones y *la sentencia apelada debe ser revocada y dictarse otra declarando sin lugar la demanda, sin especial condena de costas.*