Cordero, Juez Ponente
TEXTO COMPLETO DE LA RESOLUCION
El peticionario, Fausto París Fraguada ("París"), comparece ante este Tribunal mediante petición de certiorari planteando que el foro a quo incurrió en error al no anotar la rebeldía y al negarse a dictar sentencia en rebeldía contra "la parte co-querellada" [sic], Santa Paula Oil Corp., una entidad que nunca ha sido emplazada y tampoco forma parte en los procedimientos ante el Tribunal de *895 Primera Instancia.
I
El 21 de septiembre de 1995, París presentó una querella ante el Tribunal de Primera Instancia, Sala Superior de Bayamón. La querella va dirigida en contra de Nelson L. Capote h/n/c Santa Paula Oil Corp., como "la parte querellada", o sea, Nelson L. Capote haciendo negocios como Santa Paula Oil Corp. El diligenciamiento en este caso se hizo mediante las disposiciones de la sección 3 / i la Ley Núm. 2, 32 L.P.R.A., sec. 3120, que permite el emplazamiento sea diligenciado a persona que en cualquier forma represente al querellado. En su parte pertinente dicho estatuto dispone:

"El alguacil o una persona particular diligenciará la notificación del secretario del tribunal al querellado. Si no se encontrare el querellado, se diligenciará la orden en la persona que en cualquier forma represente a dicho querellado en la fábrica, taller, establecimiento, finca o sitio en que se realizó el trabajo que dio origen a la reclamación o en su oficina o residencia."

París alegó en la querella y en el diligenciamiento que "el querellado" es Nelson L. Capote h/n/c como Santa Paula Oil Corp. Varios meses después, mediante moción solicitando la anotación de rebeldía, alegó que el "co-querellado" [sic], Santa Paula Oil Corp., no había contestado la querella. El tribunal recurrido resolvió correctamente que sólo había un querellado ya que la Santa Paula Oil Corp. nunca fue querellada ni emplazada de manera separada al querellado Nelson L. Capote. París ahora recurre de tal resolución.
II
En este caso se hizo sólo un diligenciamiento porque sólo hay un querellado. Si hubieran dos querellados, hubiese sido necesario hacer dos diligenciamientos, cosa que no se hizo. La parte querellada, o sea, Nelson L. Capote, oportunamente contestó la querella. No obstante, ahora el querellante París pretende que se le anote la rebeldía a Santa Paula Oil Corp., y se dicte sentencia en rebeldía contra ésta, planteando que la "... parte querellada-recurrida [Santa Paula Oil Corp.] fue notificada el día 22 de septiembre de 1995." De esta forma, París trata de convertir el único emplazamiento en este caso en dos; y de convertir el nombre de un sólo querellado en dos. Denominar al querellado como Nelson L. Capote h/n/c Santa Paula Oil Corp. en el epígrafe, no equivale a tener dos partes querelladas; y emplazar a uno tampoco equivale emplazar a dos. Lo que sí hay en este caso es un intento del querellante de engarbullar al querellado para su ventaja. Sin embargo, no existe confusión. En este caso sólo hay un querellado; y en todo caso de entenderse que existen dos querellados donde se creó la apariencia de existir uno, no puede premiarse al que causó la confusión. ”...[Q]uién ha dado lugar a la situación engañosa... no puede hacer que su derecho prevalezca por encima del derecho de quien ha depositado su confianza en aquella apariencia." J. Puig Brutau, Estudios de Derecho Comparado, Barcelona, Eds. Ariel, 1951, pág. 103.
En las alegaciones de la querella no se menciona el nombre de Santa Paula Oil Corp. Las alegaciones sólo aluden a "la parte querellada". Asimismo, el epígrafe sólo alude al querellado (nótese que no dice "los querellados"), el cual identifica como Nelson L. Capote h/n/c Santa Paula Oil Corp. En igual forma, el 22 de septiembre de 1995 se emplazó a "Nelson L. Capote h/n/c Santa Paula Oil Corp., p/c Sr. Jorge González Maldonado, Gerente, o sea, el querellado mencionado en dicha querella..." El emplazamiento fue hecho a la persona que estaba frente al establecimiento en el cual Nelson L. Capote tiene su oficina, según autoriza la citada Ley Núm. 2. se liizo un emplazamiento separado a Santa Paula Oil Co. En consecuencia, el Tribunal de Primera Instancia no podía dictar una sentencia en rebeldía en contra de Santa Paula Oil Corp. sin violarle el debido proceso de ley por no ser ésta una parte ante el Tribunal, asumiendo, arguyendo, que dicha entidad tuviese su propia personalidad jurídica.
El emplazamiento y el concepto de jurisdicción in personam, está inextricablemente atado al debido proceso de ley. Medina v. Tribunal Superior, 104 D.P.R. 346, 352 (1975); A.F.F. v. Tribunal Superior, 99 D.P.R. 310, 316 (1970). El Tribunal Supremo siempre ha exigido un cumplimiento estricto cuando se trata de los requisitos para el emplazamiento. Rodríguez v. Nasrallah, 118 D.P.R. 93, 98 (1986), y casos ahí citados. Como regla general, se requiere que la persona contra quien se dirige una reclamación se designe en la demanda con su nombre correcto, y sea debidamente notificada de la demanda para así garantizarle su derecho a ser oída. Núñez González v. Jiménez Miranda, 122 D.P.R. 134, 139 (1988). "La citación o emplazamiento es 'el paso inaugural del debido *896 proceso de ley que permite el ejercicio de jurisdicción por el tribunal para adjudicar derechos del demandado. Su adulteración es flagrante violación del trato justo." Reyes Martínez v. Oriental Federal Savings Bank, _ D.P.R. _ (7 de abril de 1993), 93 J.T.S. 50, a la pág. 10567, citando a Pagan v. Rivera Burgos, 113 D.P.R. 750, 754 (1983). (Enfasis en el original.)
Ciertamente, de haberse contestado la querella por Santa Paula Oil Corp., y no por Nelson L. Capote, entonces París estuviese solicitando la anotación de rebeldía en contra de Capote. Tal tipo de táctica debe repudiarse por los tribunales. Debemos siempre recordar lo dicho por el Tribunal Supremo en Reyes Castillo v. Cantera Ramos, Inc., _ D.P.R. _ (24 de enero de 1996), 96 J.T.S. 9, pág. 606:

"A pesar de todas nuestras advertencias, refleja una vez más, el hecho de que aún no hemos logrado desterrar de nuestro sistema judicial el concepto que tienen algunos litigantes de que meras sutilezas procesales impedirán que los casos se resuelvan en los méritos y se imparta justicia sustancial."

III
Por otra parte, en la querella París invoca el procedimiento sumario establecido bajo la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. see. 3118, et seq. La querella hace alegaciones estereotipadas y de tipo general; e.g. "... el patrono discriminó y/o violó y/o amenazó contra el querellante, con relación a los términos y condiciones, compensación, ubicación y beneficio o privilegio del empleo cuando el querellante ofreció o intentó ofrecer testimonio ante un foro administrativo y discrimen por raza." No se citan en la querella hechos o datos específicos que apoyen las alegaciones.
En igual forma, se alega en la querella que París ha sufrido "... daños y perjuicios y angustias mentales como consecuencia del discrimen sufrido; ha desarrollado ansiedad, insomnio y profundos dolores y angustias, cuyos daños se estiman en una suma no menor de $60,000.00." Estas alegaciones de tipo conclusorias y estereotipadas las hemos visto en otros casos presentados por el Ledo. Angel Marrero Figarella.
En el caso de Rivera Rivera v. Insular Wire Products, Corp., _ D.P.R. _ (24 de mayo de 1996), 96 J.T.S. 76, pág. 1165, alegaciones casi idénticas fueron examinadas por el Tribunal Supremo y ese alto foro resolvió que las mismas no constituían hechos bien alegados. Además, el Tribunal Supremo en Rivera Rivera enfatizó en la página 1174:

"A la luz de lo antes expuesto, resolvemos, con relación a sentencias dictadas en rebeldía, al amparo de la Ley Núm. 2, que alegaciones conclusorias y determinaciones de derecho, al igual que los hechos incorrectamente alegados, no son suficientes para sostener una determinación de responsabilidad. Huelga decir que los daños generales reclamados, al no constituir éstos en una suma líquida, tienen que probarse. No basta con simplemente alegar que éstos montan a la cantidad reclamada."

Y continúa diciendo el Tribunal Supremo en la página 1175:
"Como podrá observarse, en lo que respecta a la Ley Núm. 100, en la querella no hay hechos bien alegados de los cuales se pueda concluir que efectivamente el despido se debió a un discrimen por parte del patrono contra el obrero por razón de edad. El querellante simplemente esboza esa conclusión de derecho sin proveer hechos que la sustenten. Bajo estas circunstancias, aunque la querella cumple, en términos generales, con el propósito de notificar a grandes rasgos la controversia y la reclamación contra Insular, el corto término provisto por el procedimiento sumario podría resultar inadecuado para que el patrono pueda hacer la investigación minuciosa requerida para obtener la información necesaria que le permita responsablemente contestar la querella y presentar sus defensas. Hay que recordar que el procedimiento sumario sólo permite una contestación y que, como regla general, no proceden las enmiendas." (Enfasis suplido.)
Y finalmente concluye el Tribunal Supremo en la página 1176:
"Procede, pues, confirmar la resolución recurrida [declarando Con Lugar una Moción de *897 Prórroga] y devolver el caso al foro de instancia para que continúen los procedimientos de forma consistente con lo aquí resuelto. El tribunal de instancia podrá, a la luz de los hechos que se le presenten y el desarrollo procesal del caso, dentro de su discreción, entre otras cosas, continuar ventilando la querella en su totalidad mediante el procedimiento sumario de la Ley Núm. 2; o, separar la causa de acción bajo la Ley Núm. 80 y ventilarla prioritariamente mediante el procedimiento sumario, posponiendo la consideración de las otras dos (2) causas de acción, bajo la Ley Núm. 100 y la Ley Núm. 45, y la determinación de si éstas se deben tramitar por la vía ordinaria o por el procedimiento sumario; o, establecer cualquier otro manejo del caso que sea consistente con lo aquí resuelto y propicie el cumplimiento de los propósitos de la legislación laboral y la norma cardinal procesal judicial de dispensar justicia deforma rápida y económica." (Enfasis suplido.)
El foro recurrido, usando su discreción y vista las alegaciones conclusorias de tipo estereotipadas y de daños y perjuicios, correctamente convirtió el caso en uno civil ordinario en la misma resolución en que denegó la anotación de rebeldía. Tal conversión se permite bajo el dictamen del caso de Rivera Rivera, supra. Por lo tanto, no estamos ahora ante un caso bajo la Ley Núm. 2, sino ante un caso civil ordinario y, en consecuencia, el Tribunal de Primera Instancia no está obligado por los severos mandamientos procesales de dicha ley.
Ante tal situación, la petición de certiorari es improcedente y el foro recurrido no erró al no anotar •la rebeldía y al negarse a dictar sentencia en rebeldía en este caso.
La Jueza Ramos Buonomo emitió un voto disidente.
IV
Por los fundamentos anteriormente expuestos, se deniega la Petición de Certiorari.
Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General